# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| | : | |
| ALI JOOBEEN, | : | Bankruptcy No. 06-15749DWS |
| | : | |
| Debtor. | : | |

| | | |
|---|---|---|
| | : | |
| In re | : | Chapter 13 |
| | : | |
| JIAN JOOBEEN, a Minor, | : | Bankruptcy No. 06-15752DWS |
| by Ali Joobeen, his Guardian & Trustee, | : | |
| | : | |
| Debtor. | : | |

# MEMORANDUM OPINION

**BY: DIANE WEISS SIGMUND, Chief Bankruptcy Judge**

Before the Court are (A) the following motions filed by judgment creditor Michael Tsokas ("Tsokas"): (1) Motion for Relief from Automatic Stay ("Ali Relief Motion") in case no. 06-15749 commenced by Ali Joobeen (the "Ali Case"); (2) Motion for Relief from Automatic Stay ("Jian Relief Motion") in case no. 06-15752 commenced on behalf of Jian Joobeen (the "Jian Case"); and (3) Motion to Dismiss Case in the Ali Case ("Ali Dismiss Motion"); and (B) Motion to Dismiss Case in the Jian Case ("Jian Dismiss

Motion") filed by the Chapter 13 trustee (the "Trustee").[1]  Upon agreement of the parties,

a consolidated record was made at the hearing on the four motions held on April 26, 2006.[2]

For the reasons that follow, the Ali and Jian Dismiss Motions are granted, thereby mooting

the request for stay relief sought by the Ali and Jian Relief Motions.


## BACKGROUND

These Chapter 13 cases come to this Court after lengthy and extremely contentious

proceedings in the state court.   As the position of Ali Jobeen ("Ali") was ultimately

rejected by that forum, he has brought his claims here to stay execution proceedings that

were imminent.  Not withstanding efforts by both parties to address state court matters,[3]

my findings from the state court proceedings are limited to those that are necessary to

understand and administer these bankruptcy cases.

---

[1]  Also scheduled for hearing was the Motion to Avoid Judicial Lien in the Ali Case.
It appears that while this was filed under the Ali caption, it was docketed by counsel as having been
filed by Jian.  Both cases numbers are on the pleading but the document merely refers generically
to "Debtor" without specifying which one.  Since it refers to Ali's properties, I will assume it was
intended for the Ali case.  In any event, the matter was continued pending adjudication of the
foregoing motions.  However, I take judicial notice of the averments of that motion as may be
relevant to the matters before me.  See p. 6 infra.

[2] The motions for relief had been scheduled for January 23, 2007 ("January Hearing") along
with the Debtor's motion to disqualify Aaron Pogach, Esquire ("Pogach") as counsel to Tsokas
(the "Disqualification Motion").  After an evidentiary hearing on the Disqualification Motion,
I disqualified Pogach.  Since Tsokas had no back-up counsel, I adjourned the January Hearing
pending Tsokas' retention of new counsel.

[3]  At the inception of the case and although he had engaged David A. Scholl, Esquire
("Scholl") as his attorney, Ali, who advised me that he is a "barrister," inundated the Clerk's Office
with the voluminous record from the state court.  He was directed to stop such transmissions, and
advised that I would only consider documents that were properly admitted into the record of these
proceedings.

On December 9, 2002 Tsokas and Pogach filed a civil action against Ali in the Court of Common Pleas of Philadelphia County (the "State Court" and the "State Court Case"). Exhibit Tsokas-9 (hereinafter "Exhibit T-_").[4]  The State Court Case was scheduled for trial on September 27, 2004, and on September 30, 2004 a default judgment in favor of Tsokas in the amount of $2,500 in compensatory damages and $20,000 in punitive damages as well as a judgment in favor of Pogach in the amount of $50,000 in punitive damages were noted on the docket.  (the "Judgments")  Id.  However, the actual date of the Judgments was February 5, 2005.  Tsokas v. Joobeen, Dec. Term 2002, No. 1078 (C.P. Phila. August 4, 2006) (Jackson, J.) (slip op.)[5]  On March 2, 2005 Ali filed an appeal to the Superior Court, and was ordered to post a $87,000 bond.  Exhibit T-9.[6]  There is no record that the bond was posted.

---

[4] Although Ali's submission of hearing exhibits stated otherwise, Exhibit T-4, the Complaint has never been placed in the record of these proceedings.  However, both counsel have advised me that the cause of action was for the wrongful use of civil proceedings.

[5] The State Court docket was incorrect and Judge Jackson corrected the record by entering judgments *nunc pro tunc* to February 5, 2005.  In a clarifying opinion of which I take judicial notice, Exhibit M-2 to January Hearing, he explains that the default judgment was in reality a finding which when followed by the praecipe to enter judgment, should have been accepted.  As the Prothonotary thought a judgment had already been entered, the praecipe was not honored as it should have been.  The error was corrected on June 14, 2006 with the *nunc pro tunc* entry of judgments to the date of the praecipe.

[6] He also filed a motion for reconsideration and new trial, motion to recuse the judge and motion to disqualify Pogach which were denied for lack of jurisdiction given the contemporaneous appeal.  His motion to open and strike judgment which were treated as motions for a new trial were also denied.  Exhibit T-9.  Ali denies that an appeal of the judgment was taken.  He claims there was an appeal of the "decision" but not the "judgment."  Hearing Transcript ("Tr.") at 41-43.

-3-

Ali was the owner of three parcels of real property:  (1) 1322 Rising Sun Avenue, Philadelphia, PA ("Rising Sun Property"); (2) 3317 North 13th Street, Philadelphia, PA (13th Street Property"); and (3) 3315 Park Avenue, Philadelphia, PA (the "Park Avenue Property") (together the "Properties").  Ali had acquired the Park Avenue Property on June 16, 1997 from Orang and Ceil Marie Joobeen in consideration for the payment of $99,151.10.  Exhibit T-2.  Ali subsequently conveyed the Park Avenue Property for $1 to himself and his son's mother Kelly M. Clark ("Clark") as trustees for their seven year old son Jian.[7]  Exhibit T-3.  While the indenture instrument sets forth an agreement date of April 29, 2004, the signatures are dated March 25, 2005 and notarized on the same page on March 25, 2005.[8]  The transfer tax certification bears the March 29, 2005 date.  The conveyance was recorded on April 28, 2005.  Exhibit T-3.  Recognizing the one year delay between the conveyance and the recording of it, Ali explained that he did not have the several hundred dollars necessary for the recording fee.  He also contends that a trust was created one year

---

[7]  Ali states that the consideration for the transfer was $139,000 consisting of a promissory note of $30,000, the assumption by the trust of a gas bill of $20,000, child support, house maintenance, etc. and that the $1 was reflected on the documents to avoid paying taxes on the transfer.  He attributes that decision to John Cahill, Esquire ("Cahill").  Given my opportunity to observe Ali in this proceeding, I conclude that it is he, not his attorneys, who makes the legal decisions.  Indeed in this case when I would not allow Ali to file *pro se* a mass of state court documents, Cahill sought to intervene on behalf of Clark as trustee for Jian to do so.  Her intervention was denied under Fed.R.Civ. P. 24(b) as her interests were amply represented by Ali, the other trustee. It also appears that Ali used Cahill, who had appeared for him in the State Court Case, to file an emergency motion to stay the sheriff sale on the Park Avenue Property on behalf of Clark as trustee for Jian after the State Court conditioned his appeal on the posting of a $87,000 bond.  Exhibits T-9 and T-14.

[8]  An additional page by the same notary follows with another notarization dated as of April 29, 2004.

-4-

before the March 29, 2005 date but there is no evidence to corroborate that chronology (or for any matter that a trust was created).

Ali was questioned whether his objective in transferring the Park Avenue Property to Jian was to prevent execution by Tsokas and Pogach. While denying that was his intent, he provided no explanation of the purpose of the transfer. He did acknowledge that the three bankruptcy cases he filed were intended to prevent the execution sale of the Park Avenue Property by the sheriff. As he stated, "that's the way it goes; that's what everybody does." Tr. at 37.

Ali's first bankruptcy case, 05-19492 filed *pro se* on July 11, 2005, was dismissed on August 31, 2005 for failure to file the required documents after an extension to do so was granted.[9] He abandoned the first case because "something happened" that didn't require him to pursue it. Tr. at 38. The second case, 05-34012, filed *pro se* on October 3, 2005 was dismissed on November 22, 2005, again for failure to file documents.[10] His current case (06-15749) was filed on December 4, 2006, again *pro se*, mere weeks after the dismissal of the prior case. Contemporaneously, Ali filed a Chapter 13 petition on behalf of his minor

---

[9] I shall take judicial notice of the docket entries in this case. Fed.R.Evid. 201, incorporated in these proceedings by Fed.R.Bankr.P. 9017. See Maritime Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1200 n.3 (3d Cir. 1991); Levine v. Egidi, 1993 WL 69146, at *2 (N.D. Ill. 1993); In re Paolino, 1991 WL 284107, at *12 n. 19 (Bankr. E.D. Pa. 1991); see generally In re Indian Palms Associates, Ltd., 61 F.3d 197 (3d Cir. 1995).

[10] Ali has confused his first case where an extension was granted and his second case where the request was denied because he had not filed the documents in the last case. Then rather than comply and file the documents, he simply filed another extension request which also was denied.

-5-

son Jian (06-15752).[11]  On December 21, 2006 Scholl entered his appearance for both Debtors, and filed Schedules, Statement of Affairs and a Chapter 13 plan in both cases on January 12, 2007.

The Ali Chapter 13 plan provides that he shall pay the Trustee $150 per month for 36 months and "if the sums paid to the Trustee are insufficient to pay all creditors in full, the Debtor will sell one of his properties at 1322 Rising Sun Ave., Philadelphia, PA 19140 and 3317 N. 13th St., Philadelphia, PA 19140."  Exhibit T-5.  According to the Trustee's records, the first plan payments were all received together but belatedly in April 2007 rather than when due in January.  Exhibit T-3, however, evidences a postal money order dated January 18, 2006 with transmittal letter dated January 18, 2007 for January's payment, and two postal money orders dated March 13, 2007 with a transmittal letter dated March 13, 2007 for the February and March payments.  The Plan is silent as to when the supplementing sale(s) will occur.  The Plan includes claims secured by judicial liens in Class Three, and advises that Debtor will contest the claim of Pogach and Tsokas and move to avoid their liens.  The Plan makes no provision for payment to Class Three.  Id.

As noted above, supra n. 1, Ali has filed a motion to avoid the lien of the Judgments ("Lien Motion").  Doc. No. 55 (case 06-15749).  It states that the values of the Rising Sun and 13th Street Properties to which the liens attach are $120,000 each and that Debtor has declared his interest in each as exempt.  Id. ¶ 3.  A review of his Schedule C contradicts

---

[11]  The juxtaposition of these filing dates with events in the state court litigation is discussed at p. 13-14 infra.

-6-

that averment.  Doc. No. 28 (same).  Ali has taken a $18,450 exemption in the Rising Sun

Property and a 0.00 exemption on the 13th Street Property.  Id.  The Lien Motion further

states that the Rising Sun and 13th Street Properties are subject to liens for real estate taxes

and utility services and prior judgments of Nguyen Thien and Parvis Kandem Aras which

exceed the value of the properties.  Lien Motion ¶ 4 (same).  A review of Ali's Schedule D

contradicts that averment.  Doc. No. 29 (same).  For both properties, the City's water and

sewer liens are $13,500 and real estate taxes are $12,656.  The Thien judgment is $1,370 and

the Parven Aras judgment is $178,000.  The total lien claims equal $205,526 for properties

valued at $240,000.  Id.

　　　Ali was examined about his income and expenses.  His testimony was evasive,

argumentative and lacking in credibility.[12]  It conflicted with the documents filed under

---

[12]  After his first appearance in this court in which repeated cautions to answer the questions
posed and not make speeches were ignored, I fined Ali $50 and put him on notice that I would not
countenance his disrespect for the integrity of the judicial forum from which he sought protection.
At his next appearance, his conduct did not improve.  He repeatedly challenged the questions asked,
lectured the assemblage as to his view of the law and was non-responsive to many of the proper
questions posed.  He refused to take direction from a court security officer.  Tr. at 55.  When the
staff attorney for the Chapter 13 trustee began to question him, he refused to answer her questions
until directed to do so.  Id. at 141.  He then personally insulted her and refused to apologize.
Id. at 143-45.  It was not until I told him he would not be allowed to testify unless he apologized and
his attorney counseled him during a recess, that an apology was forthcoming.  Upon my returning
to the courtroom, he was cautioned again that continued contumacious conduct would result in a
bench order precluding him from further testimony, including examination by his own lawyer yet
to occur.  Id. at 146.  Even that potential sanction could not dissuade him from his argumentative
and nonresponsive testimony.  Given his defiant conduct, I ordered him off the stand as I had warned
him I would.  Id. at 162-64.  Because of his disruptive practice of counseling Scholl by writing notes
to him as he examined witnesses, I told him he should sit in the back of the Court.  While I relented
when he objected and let him sit at the bar of the court with a security officer, he continued to pass
notes to Scholl.

penalty of perjury.  When asked to explain his and Jian's verified Schedules and Chapter 13 plans, he placed the onus on Scholl to have provided the accurate response.  He repeatedly disclaimed familiarity with his Schedules and Plans and appeared to view their accuracy as a matter of no real importance to him.  See, e.g., Tr. at 61-62, 81 (Schedules), 160 (Plan). Rather than make any effort to compile a list of his creditors, he simply copied the service list used by Pogach in noticing the sheriff sale in state court.  Id. at 158.  Thus PGW which has a claim for $3,000-$4,000 is not listed and as he acknowledged, there may be others that were omitted.   Indeed without regard to Tsokas and Pogach, there are secured claims of $25,261.46, priority claims of $2,608.01 and unsecured claims of $46,312.56. The Chapter 13 plan is presently funded in the amount of $5,400.

The Jian Chapter 13 plan provides for 36 monthly payments of $100.  The Trustee's records show three payments of $100 made on April 10, 2007.[13]  It classifies the secured claims of Orang and Ceil Joobeen (mortgagee) and Parvis Aras (judgment creditor) but provides that no payment will be made under the plan.  It not only makes no provision for the Judgments, it does not even acknowledge their existence.  As  Scholl explains, the holders are not creditors of Jian.  He fails to state why their liens did not follow the Park Avenue Property when it was transferred as the Aras judgment did.

---

[13]  There is no contention that the payments were timely made.  Indeed the Answer to the Jian Dismissal Motion states that Debtor has brought all payments due to the Trustee current. Doc. No. 50.  He did so on the eve of this hearing.

Jian's Schedules are as flawed as Ali's. As to the income of the seven year old Jian, Ali testified that the trust receives rental income from the Park Avenue Property. He claims, but provided no corroboration, that the trust has a bank account into which is deposited the rental checks from the student tenants and his law library in the Park Avenue Property. The income is reported on Schedule I and the Statement of Affairs as rent of $2,000 per month but as Ali acknowledged, this is what it should be, not what it is. Tr. at 83. He acts as a caretaker for the Park Avenue Property and in consideration for his services either pays a reduced monthly rent of $500 or less if he has advanced property expenses. It appears that Jian's only dedicated source of income is $800 from student tenants. Ali claims that the communal utilities are in the name of Clark as trustee and that she pays some of the trust expenses while he pays others.[14] The mortgage on the Park Avenue Property, Exhibit T-26, is scheduled as a $400 monthly obligation, a number Ali concedes is "approximate" because he has not paid it for ten years.[15] He has budgeted $150 per month for utilities on the Park Avenue Property but does not pay those regularly either. He claims he will do so "when they're [utility companies] going to shut us down." Tr. at 89. While he asserts there is no money to pay these property expenses, he has made sure that MacElree Harvey Ltd. ("MacElree"), attorneys for the Jian Trust, has been paid $1,100-$1,200 monthly on account

---

[14] Ali could not explain how that dual role is managed with one check book since she lives in Chester County and he in Philadelphia.

[15] The mortgage, Exhibit T-26, recites a $8,000 debt as of June 1997 which is reflected on Jian's Schedule D in the amount of $48,000. The obligation matures in July 2007.

of prior invoices.[16]  To date, MacElree has been paid $7,000 and is owed another $7,000. Neither the obligation nor the payments on account of this prepetition debt were disclosed in Jian's Schedules.  Another unscheduled prepetition debt is Jian's private school tuition in the amount of $10,000 which is also being paid post-petition.

Tsokas and the Trustee argue that the foregoing establishes that these Chapter 13 cases were filed in bad faith and without any valid bankruptcy purpose.  In support, they note the prior filings on the eve of sheriff sales, the failure to prosecute the bankruptcy cases, the deficient Schedules, the underfunded Chapter 13 plans and the transfer of the Park Avenue Property which they contend is a fraudulent conveyance that animates both cases. The Trustee adds that Ali's repeated blatant contempt of this Court and counsel evidences his bad faith as well.

Debtor's counsel argues that bad faith has not been established by the record made. He argues that the deficiencies in the Schedules are not very serious and in any event since they were not cited in the pleadings, they should not be considered.  While acknowledging Ali's inappropriate conduct, he states that should not be a factor in my analysis.[17]

_____

[16] Leo Gibbons, Esquire of the MacElree firm appeared and testified as to his unsuccessful efforts in the Superior Court to stay the sheriff sale of the Park Avenue Property and the appeal he is presently pursuing in that court on behalf of the trust which has been briefed and is to be argued shortly.  He testified that the funds his firm has received were from Ali's mother.  Tr. at 146. Ali stated that because of the bankruptcy, he gave her the cash and she paid the attorneys with her credit card.  Id. at 97.

[17] While recognizing that Ali conducted himself inappropriately and admitting that he was disrespectful to the court and parties, Scholl questions whether it merited the sanction I imposed, i.e., precluding him from presenting direct testimony.  A review of the transcript will make abundantly clear why I refused to allow him to continue to use the judicial forum to testify in violation of my bench directives.  Given the express warning he had that his continued disobedience would result in the precise sanction he received, the preclusion was of his own making.
(continued...)

Finally responding to what he views to be the main cause pled, i.e., the transfer of the

Park Avenue Property from Ali to his son, he notes that there has been no action commenced

to avoid a fraudulent conveyance and in any event, it will not be successful when and if it

is filed.[18]  He sees no impropriety with Jian's plan that fails to recognize Tsokas and Pogach

since they are not Jian's creditors but Ali's and appears to assume the lien of their Judgments

which attach to the Park Avenue Property will be avoided even though no steps have been

taken to that end.


**DISCUSSION**

Section 1307(c) provides that Chapter 13 petitions may be dismissed "for cause."

11 U.S.C. § 1307(c).  In In re Lilley, 91 F.3d 491, 496 (3d Cir. 1996), the Third Circuit held

that a debtor's lack of good faith in filing is sufficient cause for dismissal under § 1307(c).

Because the term "good faith" is "incapable of precise definition," the good faith inquiry

is a fact intensive determination that is left to the discretion of the bankruptcy court.  Id.

The good faith of Chapter 13 filings is "assessed on a case-by-case in light of the totality of

--------

(...continued)
Moreover, as Ali essentially used his examination on cross to volunteer the evidence he wanted to
put in the record whether responsive to the questions or not and as he has admitted the facts that
I rely upon to dismiss these cases, I am hard pressed to find he has been prejudiced in his defense
by the preclusion of further testimony.

[18]  He states that if Clark were called to testify, I would find out that the transfer was made
for reasons that had nothing to do with Tsokas.  Clark, however, was not called to testify so I must
ignore this gratuitous comment.  In any event, as discussed infra, this dismissal is not based on the
fraudulent conveyance claims.

the circumstances." Id.  To assist the bankruptcy court in its review, the following factors

have been identified by the Third Circuit to be among those relevant to the inquiry:

> the nature of the debt ...; the timing of the petition; how the debt arose;
> the debtor's motive in filing the petition; how the debtor's actions affected
> creditors; the debtor's treatment of creditors both before and after the petition
> was filed; and whether the debtor has been forthcoming with the bankruptcy
> court and the creditors.

Id. quoting In re Love, 957 F.2d 1350, 1357 (7th Cir. 1992).[19]  See also Eisen v. Curry

(In re Eisen), 14 F.3d 469, 470 (9th Cir. 1994) (quoting In re Goeb), 675 F.2d 1386, 1391

(9th Cir. 1982)) (whether the debtor "misrepresented facts in his [petition or] plan, unfairly

manipulated the Bankruptcy Code or otherwise [filed] his Chapter 13 [petition or] plan in

an inequitable manner.").  Moreover, "where the purpose of the bankruptcy filing is to defeat

state court litigation without a reorganization purpose, bad faith exists."  In re Dami, 172

B.R. 6, 10 (Bankr. E.D. Pa. 1994).

Applying the Lilley factors to the instant cases leads to the inescapable conclusion that

these cases should be dismissed as bad faith filings.

---

[19]  Specifically not adopted from the Love opinion was the question of whether the debt
would be dischargeable in Chapter 7. Id. at n.2.  In Lilley, the IRS sought to have Lilley's case
dismissed because of his prior tax fraud.  The Court concluded that since the statute allowed these
tax liabilities to be discharged in Chapter 13, there was no basis to dismiss his case as in bad faith.
However, it found that bad faith was cause for dismissal of a petition under § 1307(c), reversing the
bankruptcy judge who found to the contrary and who argues here that post-Lilley cases have
essentially limited its application to filings by tax protestors, rapists, embezzlers and other
"horrible people."  I disagree that good faith has been and is construed so narrowly.  I also disagree
with counsel's contention that this case in which Ali does not think he should pay the debt can be
distinguished from the bad faith cases where people do not have the money to pay the debt.
The bottom line in both is that the debtor is not using the bankruptcy proceeding to reorganize
but solely to obstruct legitimate creditor action.

Nature of the debt and how debt arose.  As noted the Judgments arose out of a civil

complaint for wrongful use of process.  While only $2,500 was awarded in compensatory

damages to Tsokas, punitive damages of $22,000 and $50,000 respectfully were awarded

to Tsokas and Pogach.  While Debtor argues that this debt is not of the serious character

(e.g. tax evasion, embezzlement etc.) as seen in Lilley and some other cases, I beg to differ.

Punitive damages of $70,000 in connection with a $2,500 damage claim suggests egregious

behavior and is underscored by the scorched earth litigation that followed the docketing

of the default judgment and continues to this day.  Moreover Debtor counsel's contention

that the debt here is distinguishable because it will be ultimately found to have no basis

whatsoever is belied by the docket of post-judgment matters, including petitions to strike

and open the judgments and motions for reconsideration, which runs 17 pages and reflects

repeated adverse rulings, some of which are summarized in Judge Jackson's opinion.

Exhibit T-9.  In any event, Mr. Gibbons testified that Clark's appeal will be argued shortly.

If she is successful, these bankruptcy cases once again will no longer serve Ali's purpose

since as discussed below, he is merely using them as a less costly supercedeas than the

$87,000 bond ordered in connection with his request to stay the appeal.  Presumably he will,

as before, abandon these cases.  If she is not successful, then we are exactly where we

are now, judging the bona fides of these bankruptcy cases.  In either case, the outcome is the

same – the bankruptcies serve no legitimate reorganizational purpose, and fail to address

the claims of the Judgments.

-13-

Timing.  The following sequence of events is gleaned from the State Court docket.

Exhibit T-9.   On September 27, 2004 the State Court Case was scheduled for trial.

On September 30, 2004 the State Court docket reflected a default judgment against Ali.

Post trial motions proliferated, but to no avail.  On March 5, 2005 Ali filed an appeal to the

Superior Court, and on April 6, 2006 Tsokas/Pogach filed a writ of execution.  On June 13,

2005 Ali's petition to stay execution was granted on the condition he post a $87,000 bond.

He did not do so.  Rather on July 8, 2005 Clark on behalf of Jian filed an emergency motion

to stay the execution of the Park Avenue Property scheduled for July 12, 2005, and Ali filed

an emergency motion to correct the record.  While Clark's motion was denied (but appealed),

the Superior Court deferred the posting of the bond while it considered the new motion.

Nonetheless, on August 31, 2005 Ali filed his first bankruptcy case.  Subsequently, Ali's

motion to correct the record was successful when the Superior Court found the mistake

made by the Prothonotary in docketing the default judgment and vacated it.  Ali for the

moment did not need the bankruptcy stay, and he let his case be dismissed for lack of

prosecution.  However, the Superior Court's September 28, 2005 order made clear that when

the Prothonotary straightened out the problem, the bond requirement would be renewed.

The bond still was not posted.  Rather a second bankruptcy was then filed on October 13,

2005, and a new writ of execution was stayed by that filing.  That Chapter 13 case was

dismissed on November 22, 2005.  However, it was not until June 15, 2006 that the judgment

was properly entered *nunc pro tunc*.  This set off another flurry of motions (4) and

-14-

appeals (2) by Ali.  Because these actions were ultimately unsuccessful,[20] Clark filed a

second emergency motion to stay the sale as execution had been rescheduled on a

reissued writ.  On December 4, 2006 the State Court again denied her petition.  Exhibit T-14.

However, with the pendency of all these motions and the Prothonotary's docketing error, it is

not surprising that, as Ali stated, he did not need bankruptcy after the dismissal of his

second case.  When his legal challenges were exhausted in the State Court absent the

posting of a bond and with execution otherwise imminent, on December 4, 2006 Ali filed his

third case, and Jian's first case since by then the Park Avenue Property had been transferred

to him.

I have gone to great lengths to examine the State Court docket against the activity in

this court to underscore the direct correlation between Ali's perception of his vulnerability

to execution on the Judgments and his interest in a Chapter 13 reorganization.  He does not

deny the motivation for these cases nor his abandonment of them when he had managed

to gain some procedural relief in the State Court and "didn't need bankruptcy any more."

While it is not uncommon for a debtor to seek bankruptcy protection against the loss of

property to a foreclosing creditor, it is with the understanding that the creditor will be

treated fairly and equitably as the bankruptcy law requires.  A debtor, like Ali, that has

no intention to use bankruptcy to address the debt animating the foreclosure but merely

---

[20]  An Order on July 27, 2006 denied one emergency motion to strike the judge's order
as untimely and an abuse of process.

-15-

seeks to repeatedly use bankruptcy to obstruct creditors has filed his petition in bad faith.

Dami, 172 B.R. at 11.

Treatment of creditors.  Both Ali and Jian's plans are significantly underfunded.

This conclusion is plain even without considering efforts to ignore various creditors by

allegedly paying them "outside the Plan."  Indeed Ali's testimony makes clear that he is

not paying certain of his current creditors while he is preferring other creditors whose

claims have not even been scheduled.  In short, the $150 for 36 months is a minimal

commitment in light of the valid claims against Ali and merely masquerades as a

Chapter 13 plan.  Likewise Jian's plan which contemplates $100 for 36 months is no more

connected to the payment of the debts associated with his estate.  While Tsokas and Pogach

have judgment liens, no provision is made for them in either plan.  Even assuming the

validity of the Aras judgment,[21] the statement in the Lien Motion that there is no equity in

the Ali's remaining properties available for creditors, is unsupported on the facts as found.

Ali's claim that his properties are entirely exempt and the liens of the Judgments may

therefore be avoided is belied by the facts admitted in the Schedules.  The failure to treat

those claims in either Plan further evidences Ali's bad faith.  His dilatory plan payment

history, even of the insufficient amounts, supports that conclusion as well.

---

[21] Aras is Ali's mother.  The record does not reflect the nature of her judgment or when the lien attached. Unlike the Tsokas/Pogach judgment lien, Jian's plan recognizes Aras' claim as secured on the Park Avenue Property but with arrangements to be made with her, as a relative, outside the scope of the plan.  Doc. No. 34 (case no. 06-15752).

    <u>Forthcoming with the court and creditors</u>.  As stated above, by picking and choosing who will be paid, Ali thumbs his nose at the bankruptcy law.  He understands that he is not permitted to pay prepetition legal fees of the "trust" so he lauders the payment through his mother's credit cards and he fails to disclose the obligation on Jian's schedules. The Schedules in both cases are unreliable.  They omit and they misrepresent.  Ali testified that they were his attorney's responsibility and he distanced himself from knowledge of their contents contrary to the affidavit he filed on penalty of perjury.  The oath that he was required to take to assure fairness, honesty and integrity to the proceeding was a mere formality without meaning to him.  He views bankruptcy as an entitlement without concomitant responsibility to be used so long as it serves his needs and abandoned when it does not.

    While I will not prejudge his transfer of the Park Avenue Property absent a fraudulent conveyance complaint being filed to avoid the transfer, the facts surrounding this transaction, in the context of the other steps Ali has taken to obstruct collection of the Judgments, provide further evidence of bad faith.  They include the creation of the trust after liability was found; the contemporaneous transfer of the Park Avenue Property to his seven year old son; the incredible attempt to explain away the timing of its recordation as motivated by lack of funds to record the transfer when thousands of dollars are being spent on litigation; the disparity between Ali's purchase of the property and its recorded sale price.  Whether a complaint to avoid this transfer is ultimately filed and/or sustained, the transfer to Jian

without any effort to treat the liens on that asset in Jian's case underscores the purely

manipulative purpose of that act.

Finally while Debtor's counsel states that Ali's "inappropriate" conduct is not bad

faith, I easily conclude that it is certainly evidence of bad faith.  While demanding the

protection of the bankruptcy law, his overt contempt for this Court and its processes negate

his good faith.  Access to the federal court to continue a relentless battle with Tsokas and

Pogach begun in the state court in 2002 is not an option available under the Bankruptcy

Code.  Thus, I will grant the Motions to Dismiss the Ali Case and the Jian Case.

Tsokas and the Trustee have requested that these cases be dismissed with prejudice

to foreclose another filing.  In appropriate circumstances where the facts evidence an abuse

of the provisions, purposes and spirit of Chapter 13, this Court has joined other bankruptcy

courts that find that more than dismissal is warranted.  <u>Dami</u>, 172 B.R. at 11.[22]  In such

a case, Bankruptcy Rule 9011, incorporating Fed.R.Civ.P.11 provides the authority for

---

[22]  In <u>Dami</u>, the debtor had filed four unsuccessful bankruptcy cases over 3-1/2 years each
on the eve of a mortgage foreclosure proceeding, thereby securing the benefit of the automatic stay
to obstruct the mortgagee.  His Schedules were replete with not only omissions but false statements
about his assets and liabilities, income and expenditures, and his excuses for the state of his
documents were found to be "lame and incredible."  Importantly, I found that:

> this is the precise type of bankruptcy recidivism that mocks the bankruptcy system.
> There can be no question that Debtor's conduct is a flagrant abuse of the automatic
> stay provisions of the Bankruptcy Code, interposed for the sole purpose of
> harassment and delay and intended to cause Movant great cost and expense.

<u>Id.</u> at 11.

-18-

the sanctions that Tsokas and the Trustee seek.  As the Court in <u>In re Jones</u>, 117 B.R. 415,

420 (Bankr. N.D. Ind. 1990) stated:

> [W]here a debtor files a petition in bankruptcy with no intention of obtaining
> the benefits or the goals for which the proceeding was designed or with
> no intention of pursuing those proceeding[s] to their natural conclusion, the
> bankruptcy code is being abused and bankruptcy rule 9011 is being violated.

<u>See</u> <u>also</u> <u>In re Narod</u>, 138 B.R. 478, 482 (E.D. Pa. 1992) (sanctions imposed under Rule 9011

are not limited to expenses or fees).  Other courts have relied on their discretionary power

under Section 349, <u>see</u>, <u>e.g.</u>, <u>In re McKissie</u>, 103 B.R. 189, 193 (Bankr. N.D. Ill. 1989);

or Section 105, <u>see</u>, <u>e.g.</u>, <u>In re Earl</u>, 140 B.R. 728, 741 (Bankr. N.D. Ind. 1992), to enjoin

future filings to prevent abuse of the bankruptcy process.  The Court's ability to impose this

sanction is necessary to maintain the integrity of the bankruptcy process and avoid

burdening the court's docket with frivolous cases, thereby depleting valuable and limited

court resources which could be channeled to meritorious cases.  This sanction is also

necessary to assure that this court should not be a sanctuary for litigants seeking to avoid

valid orders of the state court through improper means.  Accordingly I shall dismiss this third

bankruptcy petition filed by Ali and the one he filed on behalf of Jian with a bar against

future filings.

   While stay relief is not needed given the dismissal of these cases, the Ali and Jian

Relief Motions are not moot as to their request for an in rem order providing that any

future bankruptcy filed by Debtors, Jian's Guardian or Trustee or any entity residing in the

-19-

Park Avenue Property shall not operate as an automatic stay with respect to that property for 180 days.  Because I conclude that the filing of these petitions was part of a scheme to delay and hinder creditors that involved multiple filings affecting the Park Avenue Property, Tsokas is entitled to an order pursuant to 11 U.S.C. § 362(c)(4) which may be recorded to evidence the lack of a bankruptcy stay with respect to such property should any other case affecting such property be commenced within the 180 day period requested. [23]

An Order consistent with this Memorandum Opinion shall issue.

_____
DIANE WEISS SIGMUND
Chief U.S. Bankruptcy Judge

Dated:   May 23, 2007

---

[23]  Clark is not a party to this proceeding.  Ali has already used her position as co-trustee in the State Court Case to supplement his available actions.  He has also sought to have her intervene in these bankruptcy cases.  Without the in rem order, the dismissal would not prevent Ali from having a petition filed by Clark as trustee to impose the stay as to the Park Avenue Property. The Superior Court has made clear that Ali may pursue his claims by posting a $87,000 bond. This Court will no longer provide a costless alternative.

-20-

# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| | : | |
| ALI JOOBEEN, | : | Bankruptcy No. 06-15749DWS |
| | : | |
| Debtor. | : | |
| | : | |
| In re | : | Chapter 13 |
| | : | |
| JIAN JOOBEEN, a Minor, | : | Bankruptcy No. 06-15752DWS |
| by Ali Joobeen, his Guardian & Trustee, | : | |
| | : | |
| Debtor. | : | |

# ORDER

**AND NOW**, this 23rd day of May 2007, upon consideration of (A) the following motions filed by judgment creditor Michael Tsokas:  (1) Motion for Relief from Automatic Stay ("Ali Relief Motion") in case no. 06-15749 commenced by Ali Joobeen (the "Ali Case"); (2) Motion for Relief from Automatic Stay ("Jian Relief Motion") in case no. 06-15752 commenced on behalf of Jian Joobeen (the "Jian Case"); and (3) Motion to Dismiss Case in the Ali Case ("Ali Dismiss Motion"); and (B) Motion to Dismiss Case in the Jian Case ("Jian Dismiss Motion") filed by the Chapter 13 trustee; after notice and hearing, and for the reasons stated in the accompanying Memorandum Opinion;

It is hereby **ORDERED and DECREED** that:

1.  The Ali and Jian Dismiss Motions are **GRANTED**.  Ali Joobeen and Jian Joobeen or any trustee or guardian of Jian Jobeen  may not file further bankruptcy petitions without leave of this Court.

2.  Any bankruptcy petition subsequently filed shall not serve as a stay of state law proceedings with respect to the real property located at 3315 Park Avenue, Philadelphia, PA;

3.  Except as provided in paragraph 2 above, the Ali and Jian Relief Motions are **MOOT**.

_____
DIANE WEISS SIGMUND
Chief U.S. Bankruptcy Judge

-2-